Correne STEWART, Individually and on behalf of all other persons similarly situated,

v.

Helene WOHLGEMUTH, Individually and as Secretary of the Department of Public Welfare, Commonwealth of Pennsylvania, et al.

Civ. A. No. 72–714.

United States District Court, W. D. Pennsylvania.

Aug. 21, 1972.

Michael A. Nemec, Pittsburgh, Pa., for plaintiff.

Louis Kwall, Pittsburgh, Pa., for defendants.

Before ALDISERT, Circuit Judge, and WEBER and KNOX, District Judges.

## OPINION

KNOX, District Judge.

Correne Stewart, a full-time student at the University of Pittsburgh, Pittsburgh, Allegheny County, Pennsylvania, complains that her general public assistance allotted her by the Pennsylvania De-

partment of Public Welfare has been unconstitutionally terminated as the result of a change in departmental regulations effective June 1, 1972, denying assistance to full-time college students. Claiming that this action resulted in a deprivation of her federal constitutional rights to due process of law and equal protection of laws, she brought suit in this court on behalf of herself and others similarly situated, for declaratory and injunctive relief and requested a three-judge statutory court.

The member of the court (primary judge) to whom the case was at once assigned, recognizing that a substantial question had been raised as to the validity of these regulations under the constitution and laws of the United States which question did not appear to have been clearly adjudicated, and that the regulations were of statewide application, granted a Temporary Restraining Order after notice to the Department and requested the empanelling of a three-judge court, pursuant to 28 U.S.C. 2281 and 2284. Such a court was thereupon duly constituted by the Chief Judge of the Circuit. The court has met, considered the oral arguments and briefs of the parties, the agreed upon facts and the testimony taken at the hearing on the Temporary Restraining Order and now proceeds to a decision of the case on the merits. It was stipulated that all procedures for a preliminary as well as a permanent injunction be combined in one hearing.

The primary judge, however, refused to order the case to be maintained as a class action, but deferred the decision of this question to the three-judge court. After due consideration, the court determines that the action shall not be maintained as a class action, that the myriad of differing circumstances existing in each individual case of a college student deriving support from public welfare grants, would unnecessarily complicate this action and a class action under Rule 23 of the Federal Rules of Civil Procedure would not be a superior method for fair and efficient adjudica-

tion of these controversies. See Tindall v. Hardin, 337 F.Supp. 563 (W.D.Pa. 1972—appeal presently pending.) In view of the fact that the court is holding the regulation in question unconstitutional as a deprivation of due process of law in this, a clear cut case and we are confident that the defendants will respect the final order of this court, we see no need to become involved in the complexities of a class action. If the defendants continue to enforce this regulation against other students, we would expect plaintiff's counsel to bring another suit which may then be disposed of by a single judge since the question of constitutionality will have been clearly adjudicated. See Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); Turner v. Colonial Finance Corp., 467 F.2d 202 (5th Cir. 1972). The court therefore directs that the case not be maintained as a class action.

Turning now to the merits, we find that plaintiff is a resident of Pittsburgh, Allegheny County, Pennsylvania and as heretofore stated a full-time student at the University of Pittsburgh. In August 1970, she applied for and began receiving a general assistance grant of $68.00 every two weeks and at that time registered for employment at the Bureau of Employment Security and has continued to be registered with this Bureau since then. She has been unable to find full-time employment but is employed at the University under a work study program and also is working as a waitress at a restaurant earning $15.00 per week plus whatever tips she may receive. She is dependent for her income for her daily living expenses, including food, clothing and shelter, upon her income from employment plus her public assistance benefits. Without the latter, her income is insufficient for her maintenance. Her educational expenses including tuition are paid through the University under the above mentioned program. She is an emancipated minor who does not qualify as an ADC child.

On July 19, 1972, she received notice that her welfare benefits were terminat-

ed as of July 5, 1972, because of the change in regulations above referred to. She at once pursued her procedural remedies by filing an appeal and requested a "fair hearing appeal" which was heard August 7, 1972, before departmental hearing officer, Theodore H. Schmidt, a copy of whose ajudication dated August 21, 1972, is attached hereto at Appendix I. The hearing officer held that she was ineligible for general public assistance because of the language of departmental Regulation 3185 which was adopted effective June 1, 1972, which states: "Full-time college students not specifically exempt by 3183(e) do not meet the employment requirements unless they are receiving such education as a result of WIN placement. Plaintiff was not under the WIN program [1] nor was she exempt from this regulation under 3183(e) relating to students who are dependent, unemancipated minors qualifying as ADC children and also "full-time vocational school students if there is reasonable expectation of employment when the education or skills are acquired".

The text of the regulations 3180 through 3186 insofar as relevant here is set forth in Appendix II. No findings were published indicating the basis for the promulgation of this new regulation.

It will be observed that these regulations were adopted by the Department pursuant to the provisions of the Pennsylvania Public Welfare Code, Sections 401 et seq., 62 Purdon's Pa.Stat. 401 et seq.

Plaintiff levels a double-barrelled attack upon the recently promulgated regulation embodied in Section 3185 which has been held to deprive her of the right to public assistance. It is her position first that the regulation in question sets up a conclusive presumption by administrative fiat that full-time college students do not meet the employment requirements of the regulations and is in violation of due process of law in violation of the Fourteenth Amendment; secondly, that denial of public assistance solely on the basis of enrollment as a full-time college student is invidious discrimination resulting in denial of equal protection of the laws and that such discrimination against full-time college students while allowing students enrolled full time in vocational schools to receive public assistance, is likewise invidiously discriminatory and a denial of equal protections of the laws.

We hold unanimously that plaintiff's first point is well taken and that this regulation does set up such a conclusive presumption which is constitutionally impermissible and cannot stand.

We should first observe that this is not a case where we have a program Federally funded in whole or in part and it is claimed that the state regulations are in violation of Federal law or regulations. Thus, cases dealing with the question of violation of the Social Security Act with respect to aid to families with dependent children such as Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) and Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (also dealing with the AFDC program) are not controlling insofar as they are based upon violation of the federal statute. For the same reasons, Townsend v. Swank (Ill.), 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) and Carleson v. Remillard (Calif.) 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972) dealing with state statutes inconsistent with the Social Security Act and hence invalid under the supremacy clause are likewise inapposite. They do, however, cast light upon our problem here with respect to the alleged denial of equal protection of the laws.

The court is unanimously of the opinion that the regulation in question by its plain language and as administered by the Department of Public Welfare sets up a conclusive presumption without rational basis and cannot stand.

The state has argued that regardless of the wording of the regulation the hearing officer has the power to disregard

---

1. Work Incentive Program.

it and has the power to invalidate a regulation. If he has such power, we do not read the decision in this case as indicating that the hearing officer himself ever considered he had such authority. His decision in both discussion and conclusion is clear that he arrived at his determination simply because of the revision of regulation Section 3185 stating flatly that a full-time college student is not eligible for assistance because she does not meet the employability eligibility requirement. The full language of Mr. Schmidt's discussion and conclusion of law is as follows:

*"Discussion*

Being a full-time college student, appellant does not meet the employment requirements set forth in Regulation 3183. The revision of DPA Regulation 3185 states that full-time college students are not eligible for ·assistance because they do not meet the employability requirement of DPA regulation 3183 which states that all employable persons must actively seek, accept and retain full employment. Consequently, full-time college students do not meet the requirements and are not eligible for assistance as provided in Regulation 3182."

*"Conclusions of Law*

Appellant not having met the requirements of regulation 3182, is ineligible to receive general assistance."

This was recognized by Mr. Kalberer, Executive Director of Allegheny County at pages 14 and 30 of depositions taken November 1972.

 The presumption set up in Section 3185 is a broad conclusive presumption without rational basis of the type which has many times been held invalid by the United States Supreme Court. See Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). (Conclusive presumption that unwed fathers were unfit to raise their children). A conclusive statutory presumption may

be inaccurate and if it adversely affects the rights of individuals will be held invalid for violation of due process. Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). The fact that the application of such presumptions may promote speed and efficiency in decisions or conserve physical resources is no basis for holding them valid. Stanley v. Illinois, supra; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In Goldberg, the court recognized the right of an eligible recipient not to be subjected to termination of aid without giving him a chance "if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal," 397 U.S. 265, 266, 90 S.Ct. 1019.

In the instant case, a needy college student who may be registered for employment and ready to take jobs that are offered is subject to termination of aid because of the conclusive presumption in this regulation and for no other reason.

The conclusion we reach that the regulation is invalid because of the conclusive presumption it sets up, renders it unnecessary to render a decision on the claim of denial of equal protection of the laws either as a result of the application of this regulation to college students who are singled out as a class to be deprived of general public assistance or with respect to college students vis-a-vis full-time vocational students. It is the opinion of the court, however, that there is no merit in plaintiff's contentions in this regard. In Dandridge v. Williams, supra, the court in reversing a three-judge district court holding to the contrary said:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some in-

equality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61. [78], 31 S.Ct. 337 [340], 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61. [69–70], 33 S.Ct. 441 [443], 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justfy it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101 [1105], 6 L.Ed.2d 393.''

Again, in Jefferson v. Hackney, supra, the court said:

"This Court emphasized only recently, in Dandridge v. Williams, 397 U.S. 471 [485] 90 S.Ct. 1153 [1161], 25 L.Ed.2d 491 (1970), that in 'the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.' A legislature may address a problem 'one step at time' or even 'select one phase of one field and apply a remedy there, neglecting the others.' Williamson v. Lee Optical Co., 348 U.S. 483 [489], 75 S.Ct. 461 [465], 99 L.Ed. 563 (1955). So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket. The very complexity of the problems suggests that there will be more than one constitutionally permissible method of solving them."

In Jefferies v. Sugarman, 345 F.Supp. 172 (three-judge court S.D.N.Y.1972) (Probable jurisdiction noted by U.S. Supreme Court) holding that New York regulations extending welfare benefits to mothers enrolled in vocational programs while denying such benefits to those en-rolled in academic programs did not make an irrational distinction.

One other argument in behalf of the defendants should be noted. It is claimed that since plaintiff elected to ask for a fair hearing before the Department of Public Welfare that thereby she had elected to follow the state procedures and had no right to resort to the federal courts for relief until she had exhausted her state procedures. The Commonwealth has not pointed out to us anything in the Public Assistance Act which would permit any further review in the department. Plaintiff's sole recourse appears to be an attempt to secure a review by the Commonwealth Court.[2]

■ This action was brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983 to enforce rights and privileges secured by the Constitution of the United States and this court has jurisdiction under 28 U.S.C. § 1343(3) and (4). It has been many times held that actions for relief under the Civil Rights Act are not subject to exhaustion of state remedies. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). The remedy provided by these Acts "is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked". Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

In the light of the foregoing, an appropriate permanent injunction and declaratory judgment declaring the regulation in question to be invalid as applied to this plaintiff for lack of due process of law will be entered. Plaintiff's counsel is directed to submit a form of proposed order to the court within 10 days from the date of this opinion.

In view of the fact that the findings of fact and conclusions of law sufficiently appear in this opinion, this will be determined as compliance with Rule 52(a).

2. A provision is made for appeals to the Court of Common Pleas of the County where a person has been determined ineligible because he advocates or participates in attempting to change the form of government of the United States by unconstitutional means. There appears to be no other provision in the Public Welfare Code for appeal. 62 P.S. § 423.

APPENDIX I

EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF PUBLIC WELFARE

Fair Hearing Appeal

Case No. L–359, 203–D

APPEAL OF: Miss Corinna Stewart
Louisa Street
Pittsburgh, Pa. 15213

ADJUDICATION

*Opening*

This is an appeal from the proposed action of the Allegheny County Board of Assistance to discontinue appellant's assistance and food coupons because of alleged failure to comply with the employment regulation relative to full-time college students.

The appeal and request for a hearing was received on June 19, 1972. Notice of a hearing was sent to all interested parties by letter dated July 7, 1972, stating that the hearing would be held on Monday, August 7, 1972, at 10:00 a. m., Room 1804 Pittsburgh State Office Building, 300 Liberty Avenue Pittsburgh, Pennsylvania.

Theodore H. Schmidt, Esq., Hearing Officer, presided.

*Issue*

Whether appellant has met the condition of "seeking" and "accepting" employment within the meaning of DPW–PA Section 3182.

*Findings of Fact*

1. Appellant constitutes a general assistance category assistance unit of one (1) and has been receiving assistance since August 26, 1970, her present monthly grant being $76.30.

2. Appellant is a full-time college student at the University of Pittsburgh.

3. Appellant was notified by the ACBA that beginning June 20, 1972, her assistance grant as well as food coupons would be discontinued due to the fact that she was a full-time college student.

*Discussion*

Being a full-time college student, appellant does not meet the employment requirements set forth in Regulation 3183. The revision of DPA regulation 3185 states that full-time college students are not eligible for assistance because they do not meet the employability eligibility requirement of DPA Regulation 3182 which states that all employable persons must actively seek, accept and retain full employment. Consequently full-time college students do not meet the requirements and are not eligible for assistance as provided in Regulation 3182.

*Conclusion of Law*

Appellant not having met the requirements of regulation 3182, is ineligible to receive general assistance.

s/
Theodore H. Schmidt
Hearing Officer

8/21/72
Date

APPENDIX II

EXHIBIT B

These regulations apply to persons applying for or receiving assistance and to spouses and parent(s) of minor or incompetent adult children not applying for or receiving assistance for themselves but living with spouse or minor or incompetent children for whom assistance is being requested or received. Spouse refers to a legally married person (including common-law), and the man and woman maintaining a home together as husband and wife usually do.

3181 PURPOSE

The purpose of the employment regulations is twofold: To define the conditions under which an employable person

may be eligible for assistance, and to describe the services through which the caseworker helps the person achieve an economic self-dependence commensurate with his age, health and abilities.

The regulations are based on the fact that the community expects a person to work rather than to depend on public aid. Most persons want to work and will work to the extent they are able to do so but some few, for various reasons, require considerable help in getting and holding employment. The employment requirements are applied with the objective of helping all persons who are able to work, to preserve or regain their status as self-supporting, responsible members of the community.

## 3182 ELIGIBILITY REGULATIONS RELATING TO EMPLOYMENT

Every employable person is required, as a condition of eligibility for assistance, to seek, accept and retain employment within the level of his capacity. The effect of failure to retain employment on eligibility for assistance depends on the following factors: the deliberateness and frequency of leaving employment, and the person's efforts to seek other employment. An employed person who has employment that does not provide for himself, and his spouse and minor or incompetent children, is required to seek and accept additional or more remunerative work consistent with his capacity and the opportunities for such work.

An employable person who fails to meet these requirements is ineligible for assistance, as is his spouse and minor or incompetent adult children living with him.

Rev.* The employable person and his dependents remain ineligible until the employable person demonstrates to the satisfaction of the County Assistance Office that he is making **
** a sincere effort to get and hold employment.

## 3183 DETERMINING WHETHER A PERSON IS EMPLOYABLE

The determination that a person is or is not employable requires a finding about (1) his capacity for employment and (2) if he is handicapped, the effect of his limitations on the possibility of his getting employment. A person who is handicapped to the extent that he is unsuited or unacceptable for employment in the existing labor market, is not considered employable.

For each individual, except those in the following groups, a determination is made as to whether or not he is employable; the following persons are not considered employable:

Effective January 1, 1962 (Replacing 4–1–58)

#### EXHIBIT C

Rev. * e. Full-time undergraduate college students provided the student is a dependent unemancipated minor who qualifies as an ADC child; full-time vocational school
** students if there is reasonable expectation of employment when the education or skills are acquired.

All persons not considered employable, as herein defined, are encouraged and helped in their interest in and plans for employment but it is not a condition of eligibility for assistance that they seek, accept and retain employment.

## 3184 DETERMINING CAPACITY FOR EMPLOYMENT

A person's capacity for employment depends upon physical, mental and emotional factors as well as experience, training and skill. All of these factors are evaluated in reaching a decision whether a person is capable of employment. The following represent sources of information for evaluating capacity for employment:

a. *Work History*—the kinds of work the person has done, the kinds for which he is best equipped, his earnings, reasons for leaving jobs.

b. *Education and Training*—formal schooling and special training such as derived from vocational courses, apprenticeships, etc.

c. *Skills*—knowledge, abilities and interests of vocational significance, results of PSES aptitude testing or any similar vocational testing.

d. *Medical Reports*—recent findings of physicians, psychiatrists, psychologists and other authorities (3184.1).

e. *Observation of Personal Characteristics*—appearance, attitude, manner, responsibility, punctuality.

f. *Family*—health, welfare and morale factors in the home; ties to the community, such as home ownership.

g. *Equipment*—transportation, tools, union membership.

h. *Location*—availability to labor markets, feasibility of relocating, etc.

The total information secured about a person's capacity is evaluated and related to the person's plan for employment. A decision is reached as to: (1) whether the person is physically, mentally and emotionally capable of employment, and (2) if he is, whether the employment efforts he is making are as much as can be expected of him, and (3) whether help is required to enable him to use his capacity to its fullest possible extent.

This decision sets the eligibility requirement for the client. If the decision is that the client is capable of work but is not using his capacity to the fullest to obtain work, a plan for increasing or changing the employment effort is worked out with the client and he is advised why his past effort has not been acceptable and what change or addition is required to continue to receive assistance. He is also informed what evidence is necessary to establish that he is doing all he can to obtain a job.

Effective June 1, 1972 (Replacing 9–1–70)

EXHIBIT D

**3184.1 *Eligibility Regulations Relating to Determining Capacity***

Each person, except those in the groupings listed in 3183, is required to provide such information and evidence about his capacity for employment as is necessary to make a finding about the extent he can work and the kind of work he is able to do.

**3184.2 *Medical Examination***

**3185 DETERMINING WHETHER THE EMPLOYABLE PERSON MEETS REQUIREMENTS**

The County Office gathers and makes available to appropriate staff information about general employment conditions and specific job openings. The information is used in determining whether a handicapped person is employable, in providing employment services and in deciding whether the employable person is making a satisfactory effort to obtain employment.

If a job within the capacity of the individual is not immediately available, assistance is granted or continued provided that the individual continues to search for employment he is able to do. His efforts and the results are reviewed recurrently with him and evaluated in terms of the person's capacity and the general or specific availability of employment. His plan for continuing the search for employment is reviewed and, if necessary, adjustments in it are worked out with him.

Rev.* Full-time college students not specifically exempt by 3183 e. do not ** meet the employment requirements unless they are receiving such education as a result of WIN placement.

If an employable person refuses an employment offer the following factors are considered in deciding whether assistance may be continued: the employable person's capacity to do the type of work required; the wage rate in comparison with wages in the community for similar work; the working conditions, such as travel distance, hours of employ-

ment, whether proper protective devices are provided for hazardous occupations or whether the job is strike-bound. An offer of employment that is beyond the capacity of the employable person, or is sub-standard in respect to wages or conditions of employment is not considered a bona fide offer and refusal to accept such employment does not affect the employable person's eligibility for assistance.

Each employable person is required to provide such information and evidence about his efforts to locate employment, about his job applications or about his job losses as is necessary to make a finding about the adequacy of his efforts to seek, accept and retain employment.

As minimum evidence of activity in seeking employment, each employable person is required to register at the local BES Office (3186.2) as a condition of eligibility for himself and the persons specified in 3182.

Effective June 1, 1972
 (Replacing 9–1–70)